Ronald Brown and Rita Brown v. Commissioner.
Brown v. Commissioner
Docket No. 675-70 SC.
United States Tax Court
T.C. Memo 1971-7; 1971 Tax Ct. Memo LEXIS 328; 30 T.C.M. (CCH) 41; T.C.M. (RIA) 71007; January 11, 1971, Filed Ronald Brown, pro se, 66 Mitchell Ave., Binghamton, N. Y. John D. Steele, Jr., for the respondent. FAY
Memorandum Findings of Fact and Opinion FAY, Judge: Respondent determined a deficiency in petitioners' income tax for 1967 in the amount of $655.42. The sole issue to be decided is whether petitioner Ronald Brown was "away from home" within the meaning of section 162(a)(2) [1] and thus entitled to deduct expenses for meals, travel, and lodging. Findings of Fact Some of the facts have been stipulated and the stipulation of facts and exhibits attached thereto are incorporated herein by this reference. *329 During the taxable year 1967 petitioners maintained their residence in Binghamton, New York, and filed a joint Federal income tax return for that year with the district director of internal revenue, Buffalo, New York. Rita Brown is a party to this action only by virtue of having filed a joint return and, therefore, Ronald Brown will hereafter be referred to as petitioner. Petitioner is a steam pipe fitter and a member of the United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada. Petitioner's local 42 affiliation is with Local Union #112 in the City of Binghamton, New York. Prior to the year in question petitioner had been employed in the Binghamton area for approximately 25 years. Until the latter part of 1966 all jobs taken by petitioner were in the vicinity of Binghamton where he and his wife maintain their home. Petitioner's wife is employed in Binghamton for the local hospital. Sometime in the latter part of 1966 economic conditions were such that construction work in the Binghamton area suffered a slowdown. As the number of construction projects declined, jobs on which petitioner could work became *330 scarce and eventually vanished. During the period January 1, 1967, to April 3, 1967, petitioner was employed for about 1 month in East Hartford, Connecticut, and for 5 to 6 weeks in Oneonta, New York. Both positions were acquired by petitioner seeking employment through his local union in Binghamton, and the union, having no available positions in the local area, located work for him in or around other cities. Upon completion of the job in Oneonta in late March, petitioner again contacted his local union in search of new employment. At that time petitioner was told that there was a job available in Oswego, New York, with M.W. Kellogg Company, the piping contractor on a nuclear power plant then under construction. Petitioner accepted the position and on April 3, 1967, commenced work in Oswego. At the time of accepting the job petitioner did not anticipate the job lasting more than 6 months. Petitioner was not aware that the Kellogg company anticipated that the job would last 8 or 9 months or that the official completion schedule was approximately 4 months from when he commenced work, with an 11 month period for testing the pipe and reworking any difficulties discovered. Construction *331 difficulties were encountered far more extensive than either petitioner or his employer anticipated. Nuclear power plants by their very nature are complex and the piping involved in the construction proved time consuming. Petitioner finally terminated his employment with the Kellogg company on November 14, 1969, the total time of employment in Oswego being some 31 months. During the period January 1, 1967, to for a short while in a rooming house. Thereafter he moved to a furnished one bedroom apartment which he shared with a co-worker, both paying $10 per week in rent. He traveled home to Binghamton each weekend and holiday that he did not work. He maintained his house in Binghamton where his wife continued to live. In computing his tax for taxable year 1967 petitioner took a deduction of $2,093 for expenses for meals and lodging while in Oswego and a deduction of $469 for automobile expenses incurred while there. Respondent, concluding that petitioner was not away from home, disallowed the deductions and asserted the deficiency in question. Opinion Petitioner has taken as deductions from his 1967 income $2,093 in expenses incurred for meals and lodging and $469 for automobile *332 expenses while working in Oswego, New York. Section 162(a)(2) provides a deduction for "traveling expenses (including amounts expended for meals and lodging ***) while away from home in the pursuit of a trade or business." The primary question for us to decide is whether petitioner was "away from home" and thus entitled to deduct amounts expended for travel, meals, and lodging while employed in Oswego, New York. For purposes of section 162 a taxpayer's home is generally in the vicinity of his principal place of employment. . Should a taxpayer choose to live someplace other than the vicinity of his employment he is not considered away from home when at work, and amounts expended for travel, meals, and lodging are nondeductible personal expenses. . If, however, a taxpayer has established a locality as his home and thereafter due to the exigencies of his business his principal place of employment then changes, his tax home will remain where previously established so long as his employment elsewhere is temporary as opposed to permanent or indefinite. ; *333 . Work away from home, to be considered temporary, must be such that its termination within a 43 short period can be foreseen. . Foreseeable termination within one year has been held sufficiently short to constitute temporary employment. . Further, "if the employment while away from home, even if temporary in its inception, becomes substantial, indefinite or indeterminate in duration, the situs of such employment for purposes of the statute becomes the taxpayer's home." ; ; . Turning now to the facts of the case before us we must determine whether petitioner's employment in Oswego was temporary in its inception and if so whether it retained that status throughout the taxable year 1967. It is unquestioned that petitioner, prior to accepting employment in Oswego, had established the vicinity of Binghamton as his tax home. It is clear from petitioner's candid and convincing testimony that at all times he *334 desired to work in Binghamton; that due to economic conditions he was forced to accept employment somewhere other than his home; that at all times he intended to return to Binghamton; and that he did not expect the job to last longer than 6 months. We are convinced that under the circumstances of this case petitioner's job was temporary at its inception. The more difficult question here is whether at some point on or prior to December 31, 1967 (the end of the taxable year involved herein) petitioner's job became indefinite, thus losing its temporary status. We are convinced that it did not. What caused the extraordinary length of petitioner's stay was the unanticipated difficulties encountered during the time the installed piping was being tested and reworked. Had the job been completed on schedule, testing and reworking would have commenced approximately the beginning of September 1967. Had this been the normal construction project, rework of the piping may not have been necessary. But even taking into consideration the reworking provisions of 4 months, petitioner's work would then have been completed at or near the end of the year. Here, however, the project involved the building *335 of a nuclear power plant. During the testing and reworking period complication after complication arose dragging out completion of the project for 31 months. However, the only taxable year before us being 1967, we need only conclude that at no time prior to December 31, 1967, did petitioner's employment assume an indefinite character. It follows from our above conclusions that petitioner was away from home in the pursuit of business during the time period here involved. Consequently his expenses for meals, lodging, and transportation while in Oswego are properly deductible. Decision will be entered for the petitioners. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954.↩